Gaekett, Chief Judge,
delivered the opinion of the court:
This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner finally rejecting all of the claims, Nos. 9,10,11, 12, and 15, of appellant’s application for patent, Serial No. 125,997, filed November 7, 1949, for “Motion Picture Photographing.”
Claims 9 and 15 were cited by the Board of Appeals as illustrative, and read as follows:
9. The method of continuously photographing action occurring in a number of different sets in which long, intermediate, and close-up shots are to be photographed comprising positioning a plurality of cameras on the door of said sets in accordance with a pre-arranged starting schedule, providing extendible cables above said sets for energizing said cameras from a position not to.interfere with the movement of said cameras on said floor as the action in said sets moves from set to set, and maneuvering at least one of said cameras over a prearranged path during the action in one of said sets to maintain the nature of any particular shot during the photographing of the action by said cameras, each of said cameras being simultaneously controlled by a director.
15. The method of photographing a picture play which includes a plurality of different sets in which the action to be photographed continues between sets comprising positioning cameras to obtain long, intermediate, and close-up shots of the portion of said sets to be photographed, and controlling the starting^ and maneuvering of said cameras according to a time and position schedule as the action progresses between said sets to maintain the nature of any particular shot being photographed by a particular camera, all of said, cameras being simultaneously controlled by one director.
Claim 10 is similar to claim 9, but indicates that the cameras are not all running continuously, but that some are started and stopped during the sequence of action on different sets. Claim 11 is directed to action occurring on one set where “simultaneously operating” cam-. *903 eras photograph different aspects of the action on the set, the cameras being described as “synchronously operated.” Claim 12 is similar to claim 11 but includes the limitation of “controlling the operation of each of said cameras, including the starting, stopping, and movement thereof, in accordance with a predetermined schedule, each of said cameras and its condition of operation or nonoperation being simultaneously visible to a director.”
All of the claims have been rejected as unpatentable over the cited • art, and claim 15 has been additionally rejected on the ground that it incorporates an unpatentable “mental step.”
The following references were relied upon:
De Mille, “Motion Picture Directing”, Transactions of the Society of Motion Picture Engineers, Vol. 12 (1928), pages 295 to 309.
Willatt, “Mechanical Problems of a Director”, ibid, pages 285 to 294.
Haskins et al., 2,293,207, Aug. 18, 1942.
Del Riccio, 2,382,616, Aug. 14, 1945.
Appellant summarizes the references in his brief in the following language, which may be considered adequate for present purposes. - (References to the printed record are omitted.)
Willat is relied upon by the Board as showing what the appellant freely admits, that one step in a method of making a motion picture is to mount a camera on a movable platform and follow the actors around the set. Another step is to make shots from different distances. Otherwise, Willat merely discusses some of the ordinary problems encountered by a motion picture director in making any photoplay.
As correctly stated by the Board, “The De Mille article deals mainly with the problems of producing big feature films and teaches the use of a plurality of camera, the simultaneous taking of short and long shots and the moving of a camera to take shots at different distances from the scene to be photographed.” However, it should be noted that De Mille, who is associated with Paramount, is concerned only with the general problems of any movie director in making a motion picture by separately and noncontinuously taking shots of the various scenes at different times. This .article, ,it seems, is the best of the references and * * * accurately describes the usual practice of making morion pictures. #*»***•
Haskins et al. shows a mount provided with wheels for moving picture apparatus. The apparatus is automatically movable over a predetermined path. *******
Del Riccio discloses a method of photographing a horse race by placing in spaced relation, a plurality of motion picture cameras around a race track, each camera being operated by a cameraman who uses his own discretion in taking a section of the track, using one type of shots, and subsequently assembling the pictures so taken to make a continuous film.
Appellant’s method is concerned with the making of motion pictures, particularly, it appears from the briefs, with the making of motion pictures for use on television. It is conceded that many of *904 the steps recited iii the claims, such as the use of a plurality of cameras, the taking of long or close-up shots, and the maneuvering of the cameras, are old, appellant stating that such steps are included in the method “merely for the purpose of making it complete.” The features of claimed novelty in appellant’s method appear to be that appellant continues to photograph action as it goes from one set to an adjoining one, and that in so doing certain of the cameras are started and stopped as desired by the director.
On first impression it would seem that the size or number- of sets to be covered at one taking would be determined by the director simply as a matter of preference. If a script should contain a sequence in which the action moves from one room to another, it would seem simply a matter of judgment whether to photograph the action in the two rooms separately as two scenes, or whether to construct one large set containing the two rooms, and to photograph the action in the two rooms as one scene. Likewise, if only one close-up shot was desired, it would seem obvious that money could be saved by operating the close-up camera only long enough to take that shot. However, appellant urges the existence of invention so persistently, that it is necessary to scrutinize his arguments for possible justification.
The gist of appellant’s argument supporting patentability is that the method must be patentable since it had never been used before despite “the stimulus of a driving need.”
With regard to following action from set to set without interruption, the Primary Examiner stated:
Applicant stresses rapidity and efficiency in making a moving picture without interrupting the photographing of the various sequences constituting the final story. Due to human requirements such as rest and food and due to maintenance requirements of mechanical equipment, it is to be assumed that the final story is very limited as to time and as to scope of scenery. Under such conditions it is believed that a good director would obviously do what applicant purports to be a patentable method.
The Board of Appeals approved this holding, stating:
Photographing two different sets with different cameras, whether concurrently or sequentially, involves, in our opinion, only a matter of choice, apparently depending on the number of cameras and camera men and the amount of floor space that are available to the director. Such matters are deemed within the judgment of a skilled director.
We are in complete accord with the holding of the lower tribunals on this point. The size of a set, or the number of sub-divisions of a set to be used, seems to be merely a matter for the judgment of a director, to be exercised according to the requirements of the plot, the number of cameras and the amount of space available, and the number of retakes which will be expected to be necessary to get a satisfactory *905 result. Willat indicates in his article that scenes may be frequently broken up in a different manner than was originally planned,"according to practical considerations. As far as we can see, all appellant has done is to make one scene out of what would normally be treated as two scenes. As indicated by the board, this is simply a matter of choice.
The second feature of appellant’s, method for which patentability is claimed is the idea of starting one or more cameras after the other cameras had commenced photographing a scene, so as to take only a particular short camera shot as might be desired.
Appellant devotes a good deal of space in his brief to .discussing the prior art methods -of making motion pictures. It appears that when a sound motion picture is to be taken, it is necessary, in order to get a proper synchronization of sound and action, at the very beginning of the scene to focus all cameras upon a pair of sticks which are struck together near a sound microphone, thereby giving a point of reference common to all cameras and to the sound track to facilitate matching. One result of this procedure, of course, is that one camera cannot be started or stopped intermittently during the scene without a loss of synchronization. The pertinency of this discussion (which has little foundation in the specification) appears to be that appellant has, invented and patented a method of synchronizing sound and film which permits cameras to be cut in or out as desired during a scene. Appellant urges that we consider as evidence of invention the fact that “to practice his invention effectively it was necessary for him to make another invention.”
Aside from the fact that the referred to patent has not been incorporated into the record, we could not accept it as having any bearing at all upon thé instant case, even if it were properly in the record. If the allowance of some claims by the Patent Office in the same application cannot be considered on appeal from the rejection, of claims, a fortiori claims allowed on a different application cannot be considered.
Furthermore, we must note that the appealed claims are not limited to the taking of motion pictures with accompanying sound, and therefore the patentability of the claims must be determined irrespective of difficulties introduced by the use of sound tracks. The De Mille article, which is primarily concerned with the production of silent movies, does indeed state that all cameras operate throughout a scene. As one reason for this, De Mille says that it can result in finding several good moments in one camera view, other than the one that had been planned. De Mille warns, however, that the director must have good judgment in this, or the waste of film can ruin *906 the organization, for “cameramen love to turn the handle.” We are in full agreement with the following holding of the examiner:
* * * whether the cameras are operated simultaneously or at chosen intervals becomes a matter of judgment on.the part of the director depending on how much film may he used as expressed [by] De Mille.
Appellant has alluded to the great success of his method in producing motion pictures for use on television, and argues that this is evidence of invention. It is well established that commercial success is important only when the question of invention is in doubt. The reason for this rule is not that the courts belittle the importance of commercial success, but because commercial success is nearly always the result of a large number of co-acting factors, not all of which have a bearing on the question of invention. In this case we are unable to conclude that appellant’s alleged success is the result of invention, rather than the result of the peculiar requirements of the television market, appellant’s patent, or appellant’s personal skill in direction.
The various requirements of the claims, other than those discussed above, do not seem to us to be sufficient upon which to base a finding of patentability,- and we do not deem it necessary to discuss them in detail.
For the above reasons we are of the opinion that all of appellant’s claims were properly rejected as lacking in invention over the prior art. In this view of the case it is unnecessary to consider the rejection of claim 15 on the ground that it incorporates a mental step.
The decision of the Board of Appeals is affirmed.