51 CCPA

### Application of Robert B. KEEGAN.
### Patent Appeal No. 7200.

United States Court of Customs and Patent Appeals.
May 14, 1964.
Rehearing Denied June 18, 1964.

**316**

B. D. Watts, Watts & Fisher, Cleveland, Ohio, J. P. Wetherill, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

Robert B. Keegan appeals from the decision of the Board of Appeals affirming the rejection of claims 13 to 15 of an application [1] for patent on a pre-threaded needle package. No claims were allowed.

The application recites that the invention relates generally to the packaging art and is particularly concerned with a new package of sterilized, noncorrodible needles threaded with sutures. The package and contents are for surgical use in the closing of incisions.

The package comprises an envelope formed from two rectangular strips of thin transparent material sealed together along their edges, a shield of similar material within the envelope, and a plurality of needles threaded with sutures and passed through a fold in the shield with the pointed ends of the needles covered by a fold-over end of the shield and with the sutures extending beyond the other end of the shield.

The specification further recites that the shield may be made of any suitable material, preferably, transparent and thin and resistant to sterilizing temperatures and conditions, such as sheet material in the form of synthetic or fibrous substances, for example, polyester, polyamide, cellulose fibers with or without plastic binders and the like. The envelope may be made of various materials which should be resistant to sterilizing temperatures and conditions and readily puncturable by the eye end of a needle. A separate compartment for each needle and its suture is provided by sealing the envelope together between adjacent needles as well as between the sutures. Less than one-half the length of a suture is threaded through the eye of the needle. In situations where only one needle is required, it may be removed from the package by bending the latter against the eye of the needle thereby puncturing the package and exposing the eye of the needle so that it may readily be withdrawn therefrom. Two or more or all of the needles may be withdrawn from the package by means of a similar operation.

Claim 13 is reproduced as illustrative of the appealed claims:

"A package for use in surgery comprising two thin elongated, transparent, strips of material resistant to sterilizing temperatures and conditions and readily puncturable by the eye end of a needle, said strips being sealed together along their side edges and transversely to provide an elongated, closed compartment, a shield in said compartment composed of material resistant to sterilizing temperatures and conditions and to puncture by the pointed end of a needle, said shield being folded upon itself at one end to form two thicknesses, a plurality of surgical needles extending in substantial

1. Serial No. 791,208, filed February 4, 1959.

parallelism through at least one thickness of the shield with the pointed ends of the needles lying between the two thicknesses of the shield and adjacent to the fold thereof and a suture in each of said needles, each suture being of sufficient length for only one knot and less than about one half of the length of the suture being threaded through the needle eye."

The references relied upon by the examiner and the board are:

| Weisman | 2,377,118 | May 29, 1945 |
| Grover | 2,692,676 | Oct. 26, 1954 |
| Strader | 2,813,286 | Nov. 19, 1957 |
| Stoltz | 2,824,642 | Feb. 25, 1958 |

Weisman discloses a sealed package suitable for beverages, for example, a teabag, "comprising sheets of thermoplastic, porous, flexible, paper-like, thin material, * * * sealed in face to face relation around their peripheral edges * * *."

Grover discloses a package of surgical suture-threaded needles which can be sterilized and so maintained until used. The package comprises an elongated envelope formed by overlapping the side, bottom and top flaps of a single sheet of unspecified material, an elongated needle and suture holder within the envelope, and a plurality of needles threaded with sutures, held in transverse folds formed in the holder. The holder is made of paper, cardboard, plastic or other suitable material. The drawings show the upper end of the needle and suture holder folded over and covering the eye end of needles on the holder with pointed end down. The specification recites that the needles may "point up or point down" and that the sutures may or may not be of a double length.

Strader discloses a package of dusters sealed in individual compartments. The package comprises two sheets "of paper or other suitable material, such as cellophane. * * * The edges of the sheets are sealed along longitudinal areas so that the individual cylinders are hermetically sealed between the sheets and are kept sterile."

Stoltz discloses a package for surgical sutures wherein the sutures are maintained to time of use in sterile condition. The package comprises an outer envelope formed of transparent plastic material sealed at both ends, an inner envelope of like or similar material consisting of a top telescoped over a base envelope, a paperstock label folded in half within the inner envelope, and a coiled suture in the folded label. The outer envelope is "preferably formed of flat, transparent, gas-, heat-, or electron-permeable, plastic material; * * *. The plastic material may be polyethylene, 'Mylar,' 'Kell-F,' or like material." The completed package is sterilized through a process of "dry heat, gas, vapor, or electron beam."

It is clear from the record that the statutory basis of rejection applied by the examiner and the board was that of obviousness under 35 U.S.C. § 103, holding the claims in issue unpatentable over Grover in view of either Strader or Weisman and Stoltz.

We find merit in the argument of the solicitor that:

"As shown by Grover, a sterilizable package containing a holder carrying surgical needles threaded with sutures is not original with appellant. At most appellant would be entitled to claim that his package of pre-threaded surgical needles is an improvement over that of Grover. The claims are directed to a package and specify features not found in Grover. The issue is whether those features would have been obvious."

Claim 13 calls for two strips of transparent material "resistant to sterilizing temperatures and conditions," the "strips being sealed together along their side edges and transversely to provide" a closed compartment of the package. The claim thus distinguishes over Grover. Both Weisman and Strader, however, teach the forming of a package by sealing the side edges and transversely to provide a closed compartment. Assum-

ing that advantage would lie in changing the envelope of Grover's package to one made of two strips of material, it would be readily apparent to one skilled in the art to apply the teaching of either Weisman or Strader.

The board noted appellant's assertion that Grover's device cannot be made automatically but must be made one at a time involving additional use of material and labor reflecting higher cost of production. Grover discloses that his envelope is pre-formed and his holder of threaded needles is inserted therein. If found desirable, it would be a simple expedient, as suggested by Weisman, to form a series of connected packages from two strips of material and fill them automatically.

Stoltz teaches the use of transparent material resistant to sterilizing temperatures and conditions. While he describes his invention in conjunction with sutures, he clearly points ont that "it can be applied to other forms of material which necessitate sterile packaging for operating room use." It is the object of the Grover package to serve as a receptacle for suture-threaded needles for surgical use. Stoltz points out that the transparency of his outer and inner envelope "permits easy identification" of the material therein. Stoltz would seem clearly to suggest a transparent plastic material for the envelope of the Grover package.

Appellant argues that substitution of this material for the Grover envelope and shield would prolong the time normally required to open Grover's envelope and remove the holder therefrom. Appellant bases the time consuming differential on the difference between a sealed plastic envelope and a paper envelope having a "liftable flap." Stoltz suggests the use of surgical scissors "to clip one end of the outer envelope 10 just inwardly of the thermoseal." We are unable to perceive any significant difference in the aspects of time and effort between the two manipulations.

Claim 13 distinguishes over Grover in that it includes the limitation that the package material is "readily puncturable by the eye end of a needle." Appellant's specification discloses polyester material as suitable for his shield and readily puncturable by the eye end of a needle. As pointed out above, Stoltz teaches the use of a polyester material "Mylar"[2] as a transparent material for his envelope. We agree with the board that it would be obvious to use the transparent plastic film as shown by Stoltz for the envelope of Grover's package.

Appellant contends that the limitation that the material of his envelope be puncturable by the eye end of a needle goes directly to a novel and rapid *way* of opening the package for the removal of a needle and that the references do not teach and could not be operated for such a result. Appellant describes his method of opening the package for removal of a needle as "the simple expedient of grasping the package near the eye ends of the needles and bending the package to force the eye end of one or more needles through the thin sheet of the envelope."

■ It is significant that the claims on appeal are all directed to structure and not to method. The method of using a device is immaterial to the question of patentability of claims directed to structure of the device. In re Dulberg, 289 F.2d 522, 48 CCPA 992. In re Lampert et al., 245 F.2d 253, 44 CCPA 958.

Additionally, it is noted that the needles in Grover "may be point up or point down." Thus, reversing the needles with the point up would locate the eye end of the needles in the unshielded and readily puncturable portion of the envelope.

Appellant argues that if the holder in Grover were not removed from the envelope, "the bottom flap and the lowermost offsets would continue to grip the suture ends and retard, if not prevent,

2. The solicitor cites The Condensed Chemical Dictionary, Fifth Edition, Third Printing, 1955, wherein "Mylar" film is referred to as " 'Mylar' polyester film."

ready removal of a needle and its suture from the holder." Grover discloses withdrawing "the holder to an extent to make the needles accessible." It is apparent that such withdrawal would relieve the grip on the suture ends so that with the lower portion of the holder remaining in the envelope the lower flap and offset of the holder would not interfere with the removal of a needle and its suture from the holder.

Appellant seeks to distinguish claim 13 over the prior art in that the material specified therein is resistant to puncture by the pointed end of a needle. The record, however, supports the finding of the examiner that:

"Grover discloses that the needles may be packaged point upward. In such a modification the pointed ends of the needles would be between said two thicknesses. The shield 1 of Grover is made of plastic and would be resistant to puncture by the pointed end of a needle, insofar as the material of applicant's shield is thus resistant to puncture."

Claim 13 embodies the requirement of "less than one half of the length of the suture being threaded through the needle eye." Appellant asserts that utilization of a short suture end saves time in the suturing process and reduces patient shock and irritation, and that this was a longstanding problem which he faced and which is solved by his claimed invention. Appellant contends that Grover discloses no means by which irritation and shock caused by pulling a long length of suture through skin and flesh could be reduced.

The record supports the finding of the examiner that Grover discloses that the sutures are not necessarily of double length and "clearly suggests drawing less than half of the suture through the needle eye."

The record is devoid of any semblance of proof that at the time appellant entered the field, it was the practice to thread a needle so that a long length of suture would be pulled through skin and

flesh. As this court said in In re Burndy Corporation, 300 F.2d 938, 49 CCPA 967:

"A brief cannot take the place of proof and in its absence we disregard all such factual assertions where they are not matters of such common knowledge that we can take judicial notice of them."

Claim 14 distinguishes over Grover in that it provides for the extension of the shield "beyond the eye ends of its needles and the sutures extend beyond the adjacent end of the shield." The examiner held that to "omit the lower portion of shield 1 of Grover, and its function" would be obvious. The function of the lower portion of Grover's holder is to guard against accidental displacement. Claim 14 makes no provision for holding the suture ends against such displacement. Appellant asserts that the requirement of claim 14 emphasizes the absence of impediments to the removal of sutures from the envelope. It would seem clear, as argued by the solicitor, that if "the unimpeded removal of sutures were thought to be more desirable than guarding against accidental displacement of the suture ends, omitting the lower portion of Grover's holder 1 would be obvious." We can perceive no unexpected result in the omission of this element of Grover together with its function. In re Nelson, 198 F.2d 837, 40 CCPA 708; In re Miller, 197 F.2d 340, 39 CCPA 979.

Appellant points out that claim 15, which depends from claim 13, adds the requirements that each needle and its suture is sealed in an individual pocket by seals extending longitudinally between adjacent needles and their sutures. It is argued that these requirements make it possible to sterilize all the needles and sutures and to remove them, one or more at a time, without breaking the pockets containing the other needles and sutures. It is asserted that this is an advantage which could not be obtained by the references and the claimed structure is not obvious therefrom.

Strader teaches the forming of a package for dusters with individual pockets

for each duster. Strader points out that his plurality of separate compartments are sealed to keep the ends of the dusters isolated and sterile until exposed by removing the wrappers. One duster may be removed at a time without exposing the remaining dusters in the package. We perceive no significant difference in the problem of removing sterile dusters one at a time from a package and the removal of sterile needles and sutures one at a time from a package. We agree with the examiner that to provide individual pockets for each needle and suture of Grover would be obvious in view of Strader.

■ Appellant contends that the board committed error in refusing to accept and accord full weight to affidavit proof submitted relating to the commercial success of the claimed invention.

In rejecting the proffered proof of commercial success, the board stated:

"If there were any doubt concerning the patentability of the rejected claims, the affidavits, of course, might be considered in tilting the scale in favor of their patentability. However, we have no such doubt and therefore cannot consider the affidavits as imparting patentability to the rejected claims."

We are in accord with this conclusion reached by the board. This court stated in In re Fairbanks, 222 F.2d 725, 42 CCPA 901, that:

"It is well established that commercial success is important only when the question of invention is in doubt. The reason for this rule is not that the courts belittle the importance of commercial success, but because commercial success is nearly always the result of a large number of coacting factors, not all of which have a bearing on the question of invention."

■ Finding no reversible error in the decision of the board holding the appealed claims unpatentable over the cited art, that decision is affirmed.

Affirmed.