**Application of Kenneth THOMPSON and Richard C. Ihde.**

**Patent Appeal No. 76–615.**

United States Court of Customs and Patent Appeals.

Dec. 23, 1976.

## The Invention

Paperboard, coated with wax or polymeric resins such as polyethylene, is used as container material for liquid food products. A problem in the art has been leakage from the coated paperboard containers, particularly from the bottoms of such containers, caused by the formation of holes or cracks in the coating during heat sealing of seams, or stressing in handling operations.

Appellants' invention is illustrated in Figures 1–3:

~20~

FIG. 1

David S. Stallard, Cincinnati, Ohio (Wood, Herron & Evans, Cincinnati, Ohio), atty. of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This appeal is from a decision of the Patent and Trademark Office (PTO) Board of Appeals, affirming the rejection of claims 8–15 in application serial No. 229,350, filed February 25, 1972, for "Method of Extruding Thermoplastic Films and Articles Made Therefrom." We affirm.

See Figures 2–3 on following page.

*Fig. 2*

*Fig. 3*

A thermoplastic film is extruded onto paperboard substrate 25 to form a coating which has areas of greater thickness 31 and lesser thickness 33. Appellants have termed this coating a "profile" coating. The substrate is of sufficient width to accommodate a plurality of carton blanks 26. The thicker areas of the profile coating correspond to areas on the substrate which will ultimately be cut and scored to form the bottom of the cartons.

Claims 8 and 9 are representative:

8. An article adapted for the manufacture of paperboard cartons having a bottom structure formed by folding panels on a major horizontal bottom score line, the article comprising,

an elongated paperboard web of indeterminate length and having a predetermined width between generally parallel elongated edges, said width being sufficient to accommodate a plurality of carton blanks thereacross,

at least one longitudinally extending area in said web generally parallel to said edges and in which two major horizontal score lines are to be formed, and a unitary thermoplastic film covering a surface of said web, said film having longitudinally extending strips of varying

thicknesses, a respective strip of greater thickness covering said longitudinally extending area and at least one respective strip of lesser thickness covering the remainder of said web.

9. An article adapted for the manufacture of carton blanks from which paperboard cartons can be formed, said cartons having a bottom structure formed by folding panels on a major horizontal bottom score line, the article comprising,

an elongated unimpregnated and unscored paperboard web of indeterminate length having a predetermined width which is sufficient to accommodate a plurality of longitudinally extending adjacent rows of unformed carton blanks thereacross,

at least one longitudinally extending area in said web including portions of unformed blanks in two of said adjacent rows, and within which area the major horizontal score lines and folding panels for each of the blanks in said two rows are to be formed, and

a unitary thermoplastic film covering a surface of said web, said film having a plurality of longitudinally extending strips of varying thickness, a strip of great [sic] thickness covering said longitudinally extending area of said web such that said strip of greater thickness is of a width to cover the to be formed major horizontal score lines and folding panels of said blanks in said two rows, and at least one strip of lesser thickness covering the remainder of said web.

The reference relied on by the board is:

Gordy 3,305,383 February 21, 1967

Gordy teaches a method of improving leakage resistance of liquid-containing paperboard cartons by impregnating carton blanks or sheets having a plurality of carton patterns thereon with a waxy material at score or bend lines of the carton. Such impregnation is followed by coating of the carton blanks with a thermoplastic resin. Several resins, including polyethylene, are disclosed as suitable coating materials. Gordy further teaches:

> When the final coating of the thermoplastic resin containing composition is to be applied to the carton stock by a curtain coating procedure, some additional resistance to leakage and enhanced structural durability may be obtained by applying [a] slightly thicker layer or film of the final coating to the score or bend lines of the carton than is applied to the remaining surface area of the carton.

Gordy terms this technique "ridge coating" and indicates that "as little as about ½ mil" additional thickness along the score or bend lines of the carton blank will achieve the desired enhancement of properties and justify the slightly increased fabrication costs. The carton stock is taught to then be conventionally cut, folded, and sealed.

### The Rejection

The examiner rejected all of the claims under 35 U.S.C. § 103 in view of Gordy. He found that use of an elongated paperboard web of indeterminate length was obvious in view of Gordy's teachings of using "a sheet of paperboard having a plurality of carton patterns" and "a paperboard substrate." With respect to claims which contain the limitations "unimpregnated" and "unscored," the examiner found it would have been obvious to omit the impregnant and score lines of Gordy and their corresponding functions. The Board of Appeals essentially adopted the examiner's reasoning in affirming the rejection.

### OPINION

■ Although appellants argue that Gordy is limited to the use of flat sheets containing at most a few carton blanks and, thus, would not suggest use of an elongated paperboard web of indeterminate length, the Solicitor correctly notes that one of appellants' affidavits and the specification both admit that use of uniformly coated webs of indeterminate length in rolls was common practice in the art at the time

1294

appellants' invention was made. We are satisfied that it would have been obvious to one of ordinary skill in the art to combine Gordy's teachings with admittedly known prior art processes utilizing webs of indeterminate length. Economic factors alone would have motivated the skilled artisan to improve upon Gordy's treatment of discrete sheets by applying the ridge coating process to a continuous web of material. See *In re Clinton*, 527 F.2d 1226, 188 USPQ 365 (Cust. & Pat.App.1976).

Claims 9, 10, 12, 13, and 14 recite that appellants' paperboard substrate is "unimpregnated."[1] As noted previously, the examiner (and the Board of Appeals) found that it would have been obvious to omit the wax impregnant material of Gordy and its resulting function. Appellants urge that Gordy *requires* wax impregnation to obtain his disclosed advantages of leak resistance and improved structural durability and, consequently, would not have fairly suggested use of an unimpregnated paperboard substrate. However, Gordy's discussion of his ridge coating technique in combination with wax impregnation is in terms of the slightly increased cost involved in obtaining the disclosed benefits of ridge coating and not in terms of any necessity for impregnation prior to ridge coating. Eliminating the cost of the preliminary step of wax impregnation would have been sufficient motivation for doing so. Moreover, we are persuaded that the skilled practitioner would have recognized that the ridge coating technique taught by Gordy would strengthen a carton along the fold lines regardless of whether the carton blank was impregnated. Accordingly, we hold that elimination of the wax pretreatment and its function would have been obvious to one of ordinary skill in the art. *In re Kuhle*, 526 F.2d 553, 188 USPQ 7 (Cust. & Pat.App.1975); *In re Keegan*, 51 CCPA 1344, 331 F.2d 315, 141 USPQ 512 (1964).

With respect to the recited claim limitation argued by appellants, "at least two longitudinally extending areas" (in the web) in each of which there are portions of unformed blanks (claim 12; claim 13 recites "at least three"), appellants' affidavit admits that it was "common practice" to coat a paperboard substrate of a width sufficient to accommodate a plurality of carton blanks, and their specification states that it was "common practice" to thereafter *slit* the substrate, print and cut it into individual carton blanks. As far as the limitation "unscored" (claims 9, 12, 13, and 14) is concerned, appellants' specification also admits that it was "common practice" to score a paperboard substrate after coating.

With respect to claim 15, which recites a specific thickness of about .0015 inches for the profile coated area and about .00075 inches for the remainder of the coated area, we note that Gordy discloses that a ridge coating of as little as .0005 inches extra thickness will yield his disclosed benefits. Although none of Gordy's examples shows coated cartons of the thicknesses recited in claim 15, we are satisfied that one of ordinary skill in the art, armed with Gordy's teachings, could have readily determined optimum coating thicknesses for use on paperboard cartons.

In attempting to rebut the PTO's prima facie case of obviousness, appellants submitted several affidavits averring unexpected results, patentability over the Gordy reference, commercial success, and imitation by others. However, the affidavit concerning unexpected results merely states affiants' "expectation" that a ridge coated roll of material would be subjected to stresses sufficient to cause the coating to split. Such a conclusion, without any showing of facts on which it was based, is not persuasive of unobviousness. See *In re D'Ancicco*, 59 CCPA 748, 452 F.2d 1060, 172 USPQ 241 (1972).

[1] We note that this term was not disclosed or defined in the specification as filed. The limitation was apparently inserted into the claims by amendment in response to the PTO's citation of the Gordy reference.

In the affidavit calculated to show patentability over Gordy, limitations not found in the claims are relied on (*i. e.*, none of the claims is limited to a polyethylene-coated substrate or a substrate coated by a specific process), and these cannot be the basis for patentability. *In re Thomson*, 52 CCPA 770, 336 F.2d 604, 143 USPQ 21 (1964), *cert. denied*, 380 U.S. 972, 85 S.Ct. 1330, 14 L.Ed.2d 268, 145 USPQ 743 (1965). Although commercial success is averred, there is no evidence showing that such success was attributable to the merits of appellants' invention rather than to other factors such as advertising. See *In re Felton*, 484 F.2d 495, 179 USPQ 295 (Cust. & Pat.App. 1973); *In re Caveney*, 55 CCPA 721, 386 F.2d 917, 155 USPQ 681 (1967). Also, it is noted that such success related to *cartons* made from the claimed paperboard web rather than to the web itself. *In re Tiffin*, 58 CCPA 1420, 448 F.2d 791, 171 USPQ 294, *modifying* 58 CCPA 1277, 443 F.2d 394, 170 USPQ 88 (1971). Appellant Ihde's affidavit generally averring imitation of appellants' invention by competitors sets forth no specifics and falls far short of constituting probative evidence.[2]

In view of the foregoing, the rejection of claims 8–15 is *affirmed*.

*AFFIRMED.*

**2.** Appellants' reliance on a claim in an abandoned application, filed by a "major competitor" subsequent to the filing date of their application, as support for Ihde's affidavit, is misplaced. Such a *claim* is not evidence of imitation of appellants' invention.