**ELECTRO–NUCLEONICS, INC.,**
**Plaintiff,**

v.

**Gerald J. MOSSINGHOFF, Commissioner of Patents and Trademarks,**
**Defendant.**

**Civ. A. No. 83–3809.**

United States District Court,
District of Columbia.

Aug. 30, 1984.

See also, D.C., 593 F.Supp. 125.

William H. Meserole, Dennison, Meserole, Pollack & Scheiner, Arlington, Va., Robert Scobey, Wyatt, Gerber, Shoup, Scobey & Badie, New York City, for plaintiff.

John W. Dewhirst, John Pitrelli, U.S. Patent & Trademark Office, Arlington, Va., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

Plaintiff Electro-Nucleonics, Inc. appeals from a decision denying its application for a patent. Pursuant to 35 U.S.C. § 145, the plaintiff seeks judicial review and an order from this Court directing the Commissioner of Patents and Trademarks to issue a patent based on patent application Serial No. 111,512, filed January, 23, 1980, entitled *Disposable Cuvette Array.*

The Patent and Trademark Office (PTO) examiner rejected claims 5 through 8 of the application in suit as unpatentable under 35 U.S.C. § 103 in view of certain prior art references. [Joint Exhibit (JE) 027 to 031.][1] The Board of Appeals (Board) of the PTO affirmed the examiner's rejections and determined, in effect (JE–097 to 100) that the plaintiff was not entitled to a patent covering claims 5 through 8 of the application.

Electro-Nucleonics then filed the present proceeding seeking review of agency action under section 145. The parties agree that there are no material facts in dispute and that cross motions for summary judgment are appropriate.

For the reasons set out below, this Court rules that the decisions below are affirmed and that the defendant is entitled to judgment as a matter of law.

### A.

### UNDISPUTED MATERIAL FACTS

The disallowed patent application concerns a small ring with slots used to indi-

---

**1.** The Joint Exhibit (JE), the Administrative Record, was filed in this proceeding on June 18, 1984.

cate the positioning of a cuvette disc on a blood analyzing machine used in the testing of blood samples mixed with various chemicals.

Only four claims, numbered 5–8 (JE 18) are pending. The plaintiff's applications (JE 4 to 16) disclose a disposable cuvette array *10* in the form of a disc *12*, *14* with a plurality of cuvettes *18* arrayed circumferentially around the disc. Each cuvette is divided into an inner compartment *18a* and an outer compartment *18b* separated by a ramp portion *22a*. Body fluids, such as blood, and chemical reagents are placed in these radially aligned inner and outer compartments (*18a* and *18b*) and caused to mix in the outer compartment *18b* when the disc is rotated in a centrifugal analyzer. The mixed fluids are then analyzed by measuring and recording the transmission of light through each outer compartment. The cuvette array specifically comprises a lower (compartmented) disc *12*, an upper disc *14* and a removable locator ring *16*. The locator ring *16* is notched (slots *50*, *52*) at periphery *16d* for interrupting a light beam for signal processing purposes. The locator ring is sized so that its outer periphery *16d* extends beyond the outer periphery or compartments *18*.

Claims 5–7 were rejected by the Patent and Trademark Office examiner under 35 U.S.C. § 103, as unpatentable over U.S. Patent No. 4,123,173 to Bullock et al. (Bullock) in view of U.S. Patent No. 1,694,307 to Booth (JE–27 to 30). Claim 8 was rejected by the PTO examiner under Section 103 as unpatentable over Bullock et al. in view of Booth and in further view of U.S. Patent 3,540,858 to Rochte et al. (Rochte) (JE–28). Section 103 provides in effect that when a claimed patent is obvious when compared to a prior grant of record, the new application will be rejected.

The Board of Appeals affirmed the examiner's rejections (JE–97 to 100). It found (JE–99) the teachings of Booth and Rochte, to be merely cumulative to the teachings of Bullock.

Bullock (JE–51 to 70) discloses a disposable cuvette array *10* in the form of a disc *12*, *80* with a plurality of cuvettes *15* arrayed circumferentially around the disc. Each cuvette is divided into an inner compartment *30* and an outer compartment *50* separated by a ramp portion *42*. Body fluids, such as blood, and chemical reagents are placed in these radially aligned inner and outer compartments (*30* and *50*) and caused to mix in the outer compartment *50* when the disc is rotated in a centrifugal analyzer. The mixed fluids are then analyzed by measuring and recording the transmission of light through each outer compartment. The cuvette array specifically comprises a lower compartmented disc *12*, an upper disc *80* and a removable locator ring *200*. The upper disc *80* is notched (slots *130*, *140*) at periphery *86* for interrupting a light beam for signal processing purposes. The locator ring is notched to designate one of the disc compartments as a primary compartment. The upper disc *80* is of greater diameter than locator ring *200* and lower disc *12*, so its outer periphery *86* extends beyond the outer periphery of the locator ring *200* and compartments *50*.

The Bullock patent was assigned to the plaintiff, and the presently claimed cuvette array is acknowledged in the application in suit as an improvement over that of Bullock (JE–4, 6).

The cuvette array of Bullock, when used in plaintiff's blood analyzer, functions in the exact manner as the cuvette array claimed in the application in suit. The sole difference between the subject matter of claims 5–8 and Bullock is that the claims recite portions of varying light transmissivity (e.g., slots) in the outer periphery *16d* of the locator ring *16* whereas Bullock discloses this feature (slots) in the outer periphery *86* of the disc *80*.

The Board of Appeals found (JE–100), that the artisan reviewing that which is taught by Bullock against the background of that level of skill that is expected of the artisan and motivated to make and use the Bullock structure as inexpensively as possible would have found it obvious to modify the teachings

of the reference to obtain that which is broadly specified in appellant's claims. No additional evidence or testimony has been submitted by the plaintiff.

## B.

### ANALYSIS

The principal issue to be determined is whether the subject matter of claims 5 through 8 of the application in suit is obvious within the meaning of 35 U.S.C. § 103. Section 103, which forms the basis for the obviousness rejection made by the PTO, provides:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

In *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court provided an analysis of the statute and set forth an approach for determining obviousness based on resolving three factual inquiries as to the scope and content of the prior art; the differences between the prior art and the claims at issue; and the level of ordinary skill in the pertinent art. The parties agree that the first and second of these factual inquiries are undisputed. The last of the inquiries and the reasoning of the Board of Appeals in finding plaintiff's claims obvious is supplied in the Administrative Record. (JE–100.)

■ The question to be answered is, simply, whether it would have been obvious to one of ordinary skill in the art to modify Bullock, by placing the slot structure on the periphery of the locator ring *200* rather than on the underlying disc *80*. The answer is—yes. The defendant argues, and the court agrees, that this is merely an alternative to the structure disclosed in Bullock which includes an underlying disc having a slotted outer periphery. The radial location of the slots is the same in either case. The alternative location of the slots on the locator ring, as opposed to the disc, is merely an obvious matter of design choice. Whichever element, disc or ring, is chosen to include the peripheral slots must by necessity be situated in a manner enabling light to pass through the slots. The operation of the overall machine is the same with either arrangement. The PTO examiner and Board made the required factual inquiries and determined that in this case the above question of obviousness must be answered in the affirmative. In making this determination the Board reasoned (JE–098a):

> the artisan seeking to make and use the cuvette array taught by Bullock and knowing that the bonded upper and lower discs were disposable, whereas the locator ring was not, would have been motivated for reasons of economy and ease of manufacture to modify the Bullock cuvette array so as to eliminate the use of excess material and unnecessary manufacturing steps.... Under these circumstances it is our view that the artisan would have recognized the beneficial results to be obtained in locating the slotted periphery on the locator ring rather than the upper disk as taught by Bullock.

The Board viewed the proposed modification of Bullock as an obvious matter of design choice within the skill of the art. Compare *In re Kuhle*, 526 F.2d 553, 188 USPQ 7 (CCPA 1975).

■ It is well settled that prior art references are evaluated not only for what they expressly teach, but also for what they would fairly suggest to one of ordinary skill in the art. *In re De Lisle*, 406 F.2d 1386, 160 USPQ 806 (CCPA 1969). Nor can it be argued with any force that the conclusion of the Board was arrived at through hindsight. Such a contention was addressed by the *Sheckler* Court, *In re*

**612**

*Sheckler,* 438 F.2d 999, 1000, 168 USPQ 716, 717 (CCPA 1971):

[w]hile appellant urges that the rejection is sustainable only upon hindsight reconstruction of the prior art, we are not at all convinced that that is so. Like the board, we are persuaded that the differences in material or form between the subject matter claimed and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art. It is, of course, not necessary that either Barnes or Dryden actually suggest, expressly or in so many words, the changes or possible improvements appellant has made.... All that is required to show obviousness is that the applicant "make his claimed invention merely by applying knowledge clearly present in the prior art. Section 103 requires us to presume full knowledge by the inventor of the *prior* art in the field of his endeavor." ... Under that test appellant fails. No commercial success is claimed, nor is any other factor indicating nonobviousness shown to exist (emphasis original, case citations omitted).

Moreover, in this proceeding, as in *Sheckler,* there is no evidence of commercial success or other secondary considerations has been submitted by plaintiff.

 The factual findings of the PTO may be overturned only after reaching a "thorough conviction" that the PTO is in error. A finding that the PTO's rejection of an application is "consistent with the evidence" requires affirmance of the rejection. *Corning Glass Works v. Brenner, Comr. Pats.,* 470 F.2d 410, 175 USPQ 516 (D.C.Cir.1972). While the question of obviousness, is ultimately a matter of law, it is based on factual findings. In *Stieg v. Commissioner of Patents,* 353 F.2d 899, 901, 147 USPQ 356, 357 (D.C.Cir.1965), our appeals court for this circuit held:

There is no question but that rulings of law as such made by the Patent Office are fully reviewable, free from any "clearly erroneous" rule, by the District Court and by this court. It is just as clear however, that *when the Patent Office applies a proper principle of law to its factual findings, the resulting judgment is entitled to "great weight" and that "in the absence of new evidence carrying 'thorough conviction' that had not been considered by the Patent Office," the action of the Patent Office should be affirmed* (emphasis added).

The evidence was fully considered by the PTO and its decision is entitled to "great weight." The plaintiff has failed to carry its burden of establishing that the PTO was in error in failing to issue a patent containing the claims of its application. An appropriate order and judgment will be entered.